## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

DONALD M. MCCALL, JR. and KATHLEEN M. MCCALL,

PLAINTIFFS,

V.

UNITED STATES OF AMERICA,

DEFENDANT.

Case No.  5:18-cv-695 (BKS/TWD)

## COMPLAINT

Plaintiffs, Donald M. McCall, Jr. (hereinafter "Donald McCall" and/or "Mr. McCall") and Kathleen M. McCall (hereinafter "Kathleen McCall"), by and through their attorneys, Cherundolo Law Firm, PLLC and Cozen O'Connor, bring this Complaint against the Defendant, United States of America, by and through its agents, officers and/or employees.

## INTRODUCTION

1.     The medical malpractice alleged in this action relates to the negligence, carelessness and recklessness of the Syracuse Veterans Affair Medical Center, by and through its agents, officer and/or employees, concerning the care and treatment provided to Donald McCall from June 13, 2013 to June 14, 2013.  Specifically, the medical malpractice in this action relates to the medical care and treatment and other services provided on behalf of the Syracuse Veterans Affairs Medical Center through its agents, officers and/or employees, including: Dr. Mary Dirubbo; Dr. Matthew Garman; Dr. Hernan Rincon-Choles; Dr. Colin Hardin; Dr. Nishunt Sethi; Dr. Hani Kozman; Dr. Girish Trikha; Dr. Pankaj Bharati; Dr. Bharta; James V. Grace, RN, Vicky Manning, RN, Heather Daniels, RN, Gerylann Lococo, RN; and Veronica Benz, RN.

1

2.      The negligent, careless and reckless actions of the Defendant, by and through its agents, officer and/or employees at the Syracuse Veterans Affair Medical Center caused Donald McCall to suffer an anoxic brain injury, acute renal failure and acute metabolic acidosis and hyperkalemia, resulting in significant cognitive limitations including dysarthria and difficulties with his short and long term memory, undergo extensive rehabilitation including physical therapy, occupational therapy and speech therapy, require additional care and treatment, incur significant medical and other bills and otherwise caused him to sustain serious and permanent disabling injuries, significant conscious pain and suffering, severe mental anguish and distress, loss of enjoyment of life, depression, restricted his ability to perform daily activities of life and the likelihood of additional treatment in the future.   Plaintiff Donald McCall's injuries, pain and suffering was the direct and foreseeable result of the negligent acts and/or omissions of the Defendant by and through its agents, officers and/or employees.

## PARTIES

3.      Plaintiff, Donald McCall, is an adult individual residing at                          , Florida 32901.

4.      Plaintiff, Kathleen McCall, is an adult individual residing at                          , Florida 32901, and is the sister of Plaintiff, Donald M. McCall.

5.       Upon information and belief, the Defendant is the United States of America, by and through its agents, officers, and/or employees described herein.

6.      Upon information and belief, the United States Department of Veterans Affairs, was and is a federal entity with a medical facility located and operated at 800 Irving Avenue, Syracuse, New York 13210, known as the Syracuse Veterans Affairs Medical Center.

7.      Upon information and belief, the Syracuse Veterans Affairs Medical Center is a hospital owned, funded and/or operated by the Defendant, United States of America, and/or the United States Department of Veterans Affairs.

8.      Upon information and belief, the Syracuse Veterans Affairs Medical Center's agents, officers and/or employees, including Dr. Mary Dirubbo; Dr. Matthew Garman; Dr. Hernan Rincon-Choles; Dr. Colin Hardin; Dr. Nishunt Sethi; Dr. Hani Kozman; Dr. Girish Trikha; Dr. Pankaj Bharati; Dr. Bharta; James V. Grace, RN, Vicky Manning, RN, Heather Daniels, RN, Gerylann Lococo, RN; and Veronica Benz, RN are all duly licensed to practice medicine and/or nursing in the State of New York and are supported in their respective practices by virtue of funding from the Defendant, United States of America, and/or the United States Department of Veterans Affairs.

9.      Upon information and belief, from June 13, 2013 through June 14, 2013, Donald McCall sought and received medical care and treatment from the Syracuse Veterans Affairs Medical Center by and through its agents, officers and/or employees, including but not limited to: Dr. Mary Dirubbo; Dr. Matthew Garman; Dr. Hernan Rincon-Choles; Dr. Colin Hardin; Dr. Nishunt Sethi; Dr. Hani Kozman; Dr. Girish Trikha; Dr. Pankaj Bharati; Dr. Bharta; James V. Grace, RN, Vicky Manning, RN, Heather Daniels, RN, Gerylann Lococo, RN; and Veronica Benz, RN.

10.      Upon information and belief, Dr. Mary Dirubbo is an agent, officer and/or employee of the Syracuse Veterans Affairs Medical Center and practiced at such facility within the scope of her employment as a physician between June 13, 2013 through June 14, 2013, and provided care to Donald McCall.

11.     Upon information and belief, Dr. Matthew Garman, is an agent, officer and/or employee of the Syracuse Veterans Affairs Medical Center and practiced at such facility within the scope of his employment as a physician between June 13, 2013 through June 14, 2013, and provided care to Donald McCall.

12.     Upon information and belief, Dr. Hernan Rincon-Choles is an agent, officer and/or employee of the Syracuse Veterans Affairs Medical Center and practiced at such facility within the scope of his employment as a physician between June 13, 2013 through June 14, 2013, and provided care to Donald McCall.

13.     Upon information and belief, Dr. Colin Hardin, is an agent, officer and/or employee of the Syracuse Veterans Affairs Medical Center and practiced at such facility within the scope of his employment as a physician between June 13, 2013 through June 14, 2013, and provided care to Donald McCall.

14.     Upon information and belief, Dr. Nishunt Sethi, is an agent, officer and/or employee of the Syracuse Veterans Affairs Medical Center and practiced at such facility within the scope of his employment as a physician between June 13, 2013 through June 14, 2013, and provided care to Donald McCall.

15.     Upon information and belief, Dr. Hani Kozman, is an agent, officer and/or employee of the Syracuse Veterans Affairs Medical Center and practiced at such facility within the scope of his employment as a physician between June 13, 2013 through June 14, 2013, and provided care to Donald McCall.

16.     Upon information and belief, Dr. Girish Trikha, is an agent, officer and/or employee of the Syracuse Veterans Affairs Medical Center and practiced at such facility within the scope of his employment as a physician between June 13, 2013 through June 14, 2013, and provided care to Donald McCall.

17.     Upon information and belief, Dr. Pankaj Bharati, is an agent, officer and/or employee of the Syracuse Veterans Affairs Medical Center and practiced at such facility within the scope of his employment as a physician between June 13, 2013 through June 14, 2013, and provided care to Donald McCall.

18.     Upon information and belief, Dr. Bharta is an agent, officer and/or employee of the Syracuse Veterans Affairs Medical Center and practiced at such facility within the scope of his employment as a physician between June 13, 2013 through June 14, 2013, and provided care to Donald McCall.

19.     Upon information and belief, James V. Grace, RN, is an agent, officer and/or employee of the Syracuse Veterans Affairs Medical Center and practiced at such facility within the scope of his employment as a registered nurse between June 13, 2013 through June 14, 2013, and provided care to Donald McCall.

20.     Upon information and belief, Vicky Manning, RN, is an agent, officer and/or employee of the Syracuse Veterans Affairs Medical Center and practiced at such facility within the scope of her employment as a registered nurse between June 13, 2013 through June 14, 2013, and provided care to Donald McCall.

21.     Upon information and belief, Heather Daniels, RN, is an agent, officer and/or employee of the Syracuse Veterans Affairs Medical Center and practiced at such facility within the scope of her employment as a registered nurse between June 13, 2013 through June 14, 2013, and provided care to Donald McCall.

22.     Upon information and belief, Gerylann Lococo, RN, is an agent, officer and/or employee of the Syracuse Veterans Affairs Medical Center and practiced at such facility within the scope of her employment as a registered nurse between June 13, 2013 through June 14, 2013, and provided care to Donald McCall.

23.     Upon information and belief, Veronica Benz, RN, is an agent, officer and/or employee of the Syracuse Veterans Affairs Medical Center and practiced at such facility within the scope of her employment as a registered nurse between June 13, 2013 through June 14, 2013, and provided care to Donald McCall.

24.     Upon information and belief, and at all times relevant to this action, each of the aforementioned individuals were acting within the scope of their employment with the Syracuse Veterans Affairs Medical Center, and were so acting with the full knowledge and consent of the Syracuse Veterans Affairs Medical Center and each other.

## JURISDICTION AND VENUE

25.     This Court has jurisdiction of this action by virtue of the Federal Tort Claims Act 28 U.S.C. § 1346(b), *et. seq.*, and 28 U.S.C. §2671, *et. seq.,* pursuant to 28 U.S.C. § 1402(b). Jurisdiction is further conferred pursuant to 42 U.S.C. § (g)-(n), and pursuant to the Public Service Acts of 1992 and 1995.

26.     Venue in this matter is properly set in the United States District Court of the Northern District of New York, as that is the District within which the Defendant's acts, omissions or other events, by and through its agents, officers and/or employees, which gave rise to Plaintiffs' claim occurred and where the Syracuse Veterans Affairs Medical Center is located.

27.     Upon information and belief, all of the injuries and complications suffered by Donald McCall that are alleged to have been caused by the negligence and medical malpractice of the Defendant, by and through its agents, officers and/or employees as set forth herein, occurred within the Northern District of New York.

### ADMINISTRATIVE TORT CLAIM

28.     Pursuant to 28 U.S.C. § 2401(b), Plaintiffs duly and timely filed an Administrative Tort Claim (Claim Form #95), pro se, in the standard form as prescribed by the Department of Justice for the events and incidents described herein and seeking damages in the amount of $1,000,000,000.  The aforesaid Administrative Tort Claim dated June 9, 2015 was filed and served upon the Department of Veterans Affairs, Regional Office, 130 S. Elmwood Avenue, Buffalo, New York 14202. (A copy of the Claim is attached hereto as Exhibit "1").

29.     By letter dated April 29, 2016, the United States Department of Veterans Affairs denied Plaintiffs' claim, and stated that Plaintiffs could file suit in accordance with the Federal Tort Claims Act, sections 1346(b) and 2671-2680, title 28, United States Code, which provides that tort a claim that is administratively denied may be presented to a Federal District Court for judicial consideration within six (6) months of the date of mailing of the denial.  The letter stated that, in the alternative, Plaintiffs could file a request for reconsideration by mailing, faxing or emailing the request to the Department of Veteran's Affairs, General Counsel within six (6)

months of the date of mailing of the denial. (A copy of the April 29, 2016 letter is attached hereto as Exhibit "2").

30.     By letter dated October 26, 2016, which was sent by mail, email and fax, Plaintiffs duly and timely filed and served a Request for Reconsideration with the Department of Veterans Affairs.  In the letter, Plaintiffs noted that they had not yet been provided with all of Mr. McCall's medical records by the Syracuse Veterans Affairs Medical Center and therefore reserved the right to supplement their submission once these records were provided.  (A copy of the October 26, 2016 letter is attached hereto as Exhibit "3").

31.     By letter dated October 28, 2016, which was sent by mail, email and fax, Plaintiffs duly and timely submitted their demand on the Department of Veterans Affairs in the amount of $5,000,000.00. (A copy of the October 28, 2016 letter is attached hereto as Exhibit "4").

32.     By letter dated November 10, 2016, the United States Department of Veterans Affairs acknowledged receipt of Plaintiffs' Request of Reconsideration and invited Plaintiff to submit any additional materials that were not previously provided, including updated medical records, economic loss information and medical opinions. (A copy of the November 10, 2016 letter is attached hereto as Exhibit "5").

33.     By letter dated January 23, 2017, Plaintiffs complied with the request by the United States Department of Veterans Affairs for further documentation and submitted the report of Plaintiff's vocational and rehabilitation expert, dated January 13, 2017.  (A copy of the January 23, 2017 letter is attached hereto as Exhibit "6", excluding the attached report).

34.     By letter dated January 25, 2017, Plaintiffs provided the United States Department of Veterans Affairs with the voluminous appendix to the aforesaid report.  (A copy of the January 25, 2017 letter is attached hereto as Exhibit "7", excluding the appendix).

35.     By letter dated May 15, 2017, Plaintiffs wrote to the United States Department of Veterans Affairs to request a status of the government's consideration of Plaintiff's Request for Reconsideration. (A copy of the May 15, 2017 letter is attached hereto as Exhibit "8").

36.     By letter dated August 8, 2017, Plaintiffs submitted a request to the Records Department of the Syracuse Veterans Affair Medical Center for Plaintiff's medical records that had not yet been provided, including the Plaintiff's telemetry strips. (A copy of the August 8, 2017 letter is attached hereto as Exhibit "9").

37.     By letter dated August 30, 2017, Plaintiffs submitted a follow up request to the aforesaid request to the Records Department of the Syracuse Veterans Affair Medical Center and enclosed a signed medical authorization. (A copy of the August 30, 2017 letter is attached hereto as Exhibit "10").

38.     By letter dated October 25, 2017, Plaintiffs submitted another follow up request to the aforesaid request to the Records Department of the Syracuse Veterans Affair Medical Center. (A copy of the October 25, 2017 letter is attached hereto as Exhibit "11").

39.     By letter dated November 2, 2017, Plaintiffs submitted another follow up request to the aforesaid request the Records Department of the Syracuse Veterans Affair Medical Center. (A copy of the November 2, 2017 letter is attached hereto as Exhibit "12").

40.     By email dated December 22, 2017, Plaintiffs responded to a request by the United States Department of Veterans Affairs for a copy of the documentation recently provided by the Records Department of the Syracuse Veterans Affair Medical Center.  (A copy of the December 22, 2017 email is attached hereto as Exhibit "13").

41.     By email dated March 16, 2018, Plaintiffs responded to a request by the United States Department of Veterans Affairs by providing a copy of the report of Plaintiff's liability expert, dated March 7, 2018.  (A copy of the March 16, 2018 email is attached hereto as Exhibit "14").

42.     By emails dated April 9, 2018, April 17, 2018 and May 1, 2018, Plaintiffs wrote to the United States Department of Veterans Affairs to request a status of the government's consideration of Plaintiff's Request for Reconsideration. (A copy of the aforementioned emails are attached hereto as Exhibit "15").

43.     By email dated May 1, 2018, the attorney for the United States Department of Veterans Affairs advised that she needed more time to review Plaintiffs' request for reconsideration and apologized for the delay.  (A copy of the aforementioned emails are attached hereto as Exhibit "16").

44.     By email dated May 24, 2018, Plaintiffs complied with a request for further documentation as requested by the United States Department of Veterans Affairs. (A copy of the May 24, 2018 email is attached hereto as Exhibit "17", without attachments).

45.     To date, the United States Department of Veterans Affairs has failed to make a final disposition of Plaintiffs' claim and more than six (6) months have elapsed since Plaintiffs filed and

served their Request for Reconsideration.  Pursuant to 28 U.S.C. §2675(a), Plaintiffs hereby exercise their option to treat the failure of the Department to make a final determination of their claim as a final denial of the claim as of the date this Complaint is filed.

46.     Plaintiffs have exhausted all administrative remedies, and now bring this action within the six-month time limitation as provided under Federal Torts Claims Act, 28 § U.S.C. 2401(b).

## FACTUAL ALLEGATIONS AND BACKGROUND

47.     Plaintiffs hereby repeat and reallege the allegations set forth in the foregoing paragraphs of this Complaint as though fully set forth herein.

48.     Upon information and belief, on or about June 13, 2013 at approximately 6:20PM, Donald McCall presented to the Emergency Department of the Syracuse Veterans Affairs Medical Center in Syracuse, New York with a chief complaint of abdominal pain.

49.     Upon information and belief, Syracuse Veterans Affairs Medical Center is an entity, division and/or otherwise controlled by the United States Department of Veterans Affairs, and as such, has received funding from the Federal Government and thus is subject to the Federal Tort Claims Act.

50.     Upon information and belief, Donald McCall was seen, evaluated and treated at the Syracuse Veterans Affairs Medical Center by Dr. Mary Dirubbo; Dr. Matthew Garman; Dr. Hernan Rincon-Choles; Dr. Colin Hardin; Dr. Nishunt Sethi; Dr. Hani Kozman; Dr. Girish Trikha; Dr. Pankaj Bharati; Dr. Bharta; James V. Grace, RN, Vicky Manning, RN, Heather Daniels, RN,

Gerylann Lococo, RN; and Veronica Benz, RN during June 13, 2013 through his discharge on July 22, 2013.

51.     Upon information and belief, following Donald McCall's arrival at the Syracuse Veterans Affairs Medical Center on June 13, 2013, he was examined in the Emergency Department by Veronica Benz, RN, Gerylann Lococo, RN, Dr. Matthew Garman and/or Dr. Mary Dirubbo and found to be hypertensive and tachychardic.

52.     Upon information and belief, when Donald McCall was in the Emergency Department, his pulse was 150 and his blood pressure was 174/115.

53.     Upon information and belief, at or about 6:40 PM, an EKG was performed on Donald McCall which indicated, "Sinus tachycardia with some ST segment elevations, possible J point elevations, in II, III aVF as well as V2, V3, V4." A repeat EKG suggested possible new onset of atrial fibrillation.

54.     Upon information and belief, the medical chart indicates that a total of three (3) EKG's were performed, two (2) of which showed atrial fibrillation and one of which showed atrial flutter with a 2:1 block.

55.     Upon information and belief, an echocardiogram was not performed on Donald McCall at any time during June 13, 2013.

56.     Upon information and belief, at 8:55PM on June 13, 2013, on orders of Dr. Matthew Garman and/or Dr. Mary Dirubbo, Donald McCall was given a 5 mg dose of Cardizem by IV to decrease his heart rate.

57.     Upon information and belief, at 9:00PM on June 13, 2013, Donald McCall's pulse was 125 and his blood pressure was 138/118.

58.     Upon information and belief, at 9:15PM on June 13, 2013, on orders of Dr. Matthew Garman and/or Dr. Mary Dirubbo, Donald McCall was given a 10 mg dose of Cardizem by IV.

59.     Upon information and belief, prior to 11:40PM on June 13, 2013, Dr. Colin Hardin and/or Dr. Hernan Rincon-Choles ordered that Donald McCall be placed on a Cardizem drip at a rate of 10 mg/hour and further ordered that Plaintiff be placed back on his home dose of metoprolol of 50 mg tablet/twice a day.

60.     Upon information and belief, at 11:40PM on June 13, 2013, Heather Daniels, RN administered a 60 mg tablet of Diltiazem to Donald McCall.

61.     Upon information and belief, at 11:44PM on June 13, 2013, Heather Daniels, RN started a 125 mg Cardizem drip at a rate of a rate of 10 mg/hour on Donald McCall.

62.     Upon information and belief, at 12:37AM on June 14, 2013, Donald McCall's pulse was between 125 and 150 and his blood pressure was 153/91.

63.     Upon information and belief, at 1:23AM on June 14, 2013, Heather Daniels, RN administered an additional 20mg dose of Diltiazem by IV to Donald McCall.

64.     Upon information and belief, at 4:50AM on June 14, 2013, Heather Daniels, RN administered a 60 mg tablet of Diltiazem to Donald McCall.

65.     Upon information and belief, at about 7:30 AM on June 14, 2018, Mr. McCall's pulse was 71 and his blood pressure was 122/82.

66.     Upon information and belief, at 7:30AM on June 14, 2013, a bedside echocardiogram was performed on Donald McCall.  This was the first echocardiogram that was performed on Mr. McCall since his arrival at Emergency Department the day before.

67.     Upon information and belief, the echocardiogram report was dictated at 10:52AM and was compared to a prior echocardiogram that was performed on Donald McCall in January 2013.

68.     Upon information and belief, the echocardiogram performed on Donald McCall in January 2013 showed a left ventricular ejection fraction of 55%.

69.     Upon information and belief, the echocardiogram performed on Donald McCall on June 14, 2013 showed a left ventricular ejection fraction of approximately 30-35%.

70.     Upon information and belief, at 8:37AM on June 14, 2013, Gerylann Lococo, RN, administered a 50 mg tablet of Metoprolol to Donald McCall.

71.     Upon information and belief, at 9:15AM on June 14, 2013, Dr. Bharta ordered that Donald McCall receive an additional dose of Diltiazem and that the Cardizem drip be turned off in one hour.

72.     Upon information and belief, at 9:45AM on June 14, 2013, Gerylann Lococo, RN, administered a 30 mg tablet of Diltiazem to Donald McCall.

73.     Upon information and belief, at 10:21AM on June 14, 2013, Gerylann Lococo, RN reported that the Cardizem drip for Donald McCall was completed and a new Cardizem drip was begun.

74.     Upon information and belief, at 10:30AM on June 14, 2013, Donald McCall's pulse was 72 and his blood pressure was 120/86.

75.     Upon information and belief, at approximately 10:50AM on June 14, 2013, Dr. Bharta ordered that the Cardizem drip for Donald McCall be discontinued.

76.     Upon information and belief, the medication administration record indicates that the second Cardizem drip was not discontinued as ordered, but was continued until "completed" at 4:03PM on June 14, 2013.

77.     Upon information and belief, at approximately 11:50AM on June 14, 2013, Donald McCall was noted to be hypotensive and his blood pressure was 95/81.

78.     Upon information and belief, an ICU resident reported that Donald McCall became hypotensive and bradycardic around noon and that Mr. McCall was symptomatic and complained of dizziness when he sat up.

79.     Upon information and belief, at 12:25PM on June 14, 2013, Donald McCall's pulse was 57 and his blood pressure was 88/70.  At that time, he was noted to be light headed and sweaty.

80.     Upon information and belief, at 12:40PM on June 14, 2013, Donald McCall's pulse was 57 and his blood pressure was 73/54.  At about this time, Donald McCall was transferred from a chair to his bed and lost consciousness.

81.     Upon information and belief, at 1:45PM on June 14, 2013, Donald McCall's pulse was 44 and his blood pressure was 71/35.

82.     Upon information and belief, at 2:00PM on June 14, 2013, Donald McCall's pulse was 37 and his blood pressure was 90/75.

83.     Upon information and belief, at 2:07PM on June 14, 2013, Dr. Hani Kozman indicated, "Do not treat his HR (brady/tachy) unless symptomatic."

84.     Upon information and belief, at 2:52PM on June 14, 2013, Donald McCall's pulse was 40.

85.     Upon information and belief, at approximately 3:15 PM to 4:00 PM on June 14, 2013, Donald McCall was transferred to the ICU.  He was placed in a bed and connected to monitors.

86.     Upon information and belief, at approximately 4:03PM on June 14, 2013, James Grace, RN, reported that the Cardizem drip for Donald McCall was "completed."

87.     Upon information and belief, at approximately 4:04PM on June 14, 2013, James Grace, RN, administered Dobutamine to Donald McCall by IV in an effort to increase his blood pressure and heart rate.

88.     Upon information and belief, Donald McCall was also started on neo-synephrine in an effort to increase his blood pressure and heart rate.

89.     Upon information and belief, a nasal gastric (low Gomco) tube was inserted into Donald McCall's stomach to counteract the effect of the calcium channel blocker

(Cardizem/Diltiazem) and beta blockers (Metoprolol/Lopressor) that had been administered to him.

90.    Upon information and belief, at 4:38 PM on June 14, 2013, Donald McCall's pulse was 55.

91.    Upon information and belief, at the time Donald McCall was transferred to the ICU, he was a known, significant fall risk.  In fact, the Morse Fall scale was performed and a score of 95 was received, indicating a high risk for falls.

92.    Upon information and belief, adequate fall protection was not implemented for Donald McCall.  Among other things, the foot board was removed from Donald McCall's bed.

93.    Upon information and belief, at 7:30 PM on June 14, 2013, the nurse reported hearing a "thud" from Donald McCall's room and, upon arrival, found him face down on the floor with blood oozing from his face.

94.    Upon information and belief, according to the Code Blue Template Note, Donald McCall reportedly had a pulse and was breathing.

95.    Upon information and belief, a Code Blue was called at 7:34 PM.  Upon arrival, Donald McCall reportedly had no pulse and was not breathing.

96.    Upon information and belief, CPR was started at 7:37 PM.  It was reported that the rhythm "appeared" to by asystole.  ACLS medications were administered.  Bilateral breathing sounds were noted.

97.    Upon information and belief, at 7:43 PM, Donald McCall was intubated.

98.     Upon information and belief, at 7:44 PM, there was reportedly no pulse.   The medical chart indicates that a course V-fib rhythm was reported on the cardiac monitor and Donald McCall was defibrillated and CPR was resumed.

99.     Upon information and belief, following defibrillation, the rhythm reportedly converted to sinus bradycardia but Donald McCall remained unresponsive.

100.    Upon information and belief, at least ten (10) minutes passed between the time the code was called and the time defibrillation was administered to Donald McCall.

101.    Upon information and belief, the Defendant, through its agents, servants and employees failed to maintain, protect and preserve its medical records concerning Donald McCall, including the telemetry strips generated immediately prior to, during and immediately after Mr. McCall's Code Blue.

102.    Upon information and belief, Donald McCall became hypotensive and severely bradycardic because of the over-medication of calcium channel blockers and/or beta blockers by Defendant, its agents, servants and/or employees.

103.    Upon information and belief, Dr. Hani Kozman, the attending cardiologist, specifically concluded, "The patient [Donald McCall] developed severe bradycardia and hypotension related to calcium channel blockers."

104.    Upon information and belief, Dr. Nishunt Sethi, a cardiology fellow, concluded, "AFL/AF with slow ventricular response likely secondary to over treatment with AVN agents (Cardizem/Lopressor)."

105.     Upon information and belief, an Internist for the Defendant indicated in the Discharge Summary, "The patient [Donald McCall] became bradycardic and had cardiac arrest. This was thought to be secondary to excessive AV nodal blockade from Cardizem and Metoprolol."

106.     Addressing Donald McCall's medical management following the cardiac arrest, the Internist indicates, "This was in view of his excessive AV nodal blockade which led to his cardiac arrest previously."

107.     Upon information and belief, the medical chart indicates that Donald McCall suffered, "Cardiac arrest secondary to nodal blockade from calcium channel blocker overdose."

108.     Upon information and belief, Donald McCall remained in ICU from June 14, 2013 until June 29, 2013.

109.     Upon information and belief, on June 29, 2013, Donald McCall was transferred from ICU to the medical floor where he remained until July 9, 2013.

110.     Upon information and belief, on July 9, 2013, Donald McCall was transferred from the medical floor to the rehabilitation service where he remained until July 22, 2013.

111.     Upon information and belief, on July 22, 2013, Donald McCall was discharged and transferred to St. Camillus for Adult Day Care services.

112.     Upon information and belief, Donald McCall has been hospitalized on multiple additional occasions for treatment of his injuries.

113.    Upon information and belief, as a result of the negligence, carelessness and recklessness of agents, officers and/or employees of Syracuse Veterans Affair Medical Center, Donald McCall sustained serious injuries including an anoxic brain injury, acute renal failure and acute metabolic acidosis and hyperkalemia.

114.    Upon information and belief, as a result of the negligence, carelessness and recklessness of agents, officers and/or employees of Syracuse Veterans Affair Medical Center, Donald McCall has suffered significant cognitive limitations, including slurred speech and significant problems with his short and long term memory.

115.    Upon information and belief, as a result of the negligence, carelessness and recklessness of agents, officers and/or employees of Syracuse Veterans Affair Medical Center, Donald McCall has suffered significant functional limitations. For an extended period of time, Donald McCall needed assistance ambulating and was forced to use a wheeled walker.  He also needed assistance in bathing, preparing meals, doing his laundry and cleaning.   He also needed the help of others to take his medications and for transportation.

116.    Upon information and belief, as a result of the negligence, carelessness and recklessness of agents, officers and/or employees of Syracuse Veterans Affair Medical Center, Donald McCall has been required to undergo extensive treatment and rehabilitation for his injuries, including physical, occupational and speech therapy.

117.    Upon information and belief, as a result of the negligence, carelessness and recklessness of agents, officers and/or employees of Syracuse Veterans Affair Medical Center, Donald McCall can no longer work and has been declared 100% disabled by the Social Security Administration.

118.    Upon information and belief, as a result of the negligence, carelessness and recklessness of agents, officers and/or employees of Syracuse Veterans Affair Medical Center, Donald McCall can no longer drive as his driver's license has been suspended due to his injuries.

119.    Upon information and belief, as a result of the negligence, carelessness and recklessness of agents, officers and/or employees of Syracuse Veterans Affair Medical Center, Donald McCall is unable to live by himself due to his brain injury and cognitive and functional limitations, including his difficulties with his short term memory,

120.    Upon information and belief, as a result of the negligence, carelessness and recklessness of agents, officers and/or employees of Syracuse Veterans Affair Medical Center, Donald McCall suffers from insomnia.

121.    Upon information and belief, as a result of the negligence, carelessness and recklessness of agents, officers and/or employees of Syracuse Veterans Affair Medical Center, Donald McCall suffers from depression which was caused and/or exacerbated by this incident and the resulting functional and cognitive limitations.   Donald McCall continues to treat with psychologists and/or psychiatrists for his depression.

122.    Upon information and belief, as a result of the negligence, carelessness and recklessness of agents, officers and/or employees of Syracuse Veterans Affair Medical Center, Donald McCall is required to take a variety of medications for conditions caused by this incident, including medications for insomnia, depression, blood pressure and heart.

123.    Upon information and belief, as a result of the negligence, carelessness and recklessness of agents, officers and/or employees of Syracuse Veterans Affair Medical Center,

Donald McCall has suffered significant conscious pain and suffering, severe mental anguish and distress, loss of enjoyment of life, depression, and the likelihood of additional medical care and treatment in the future.

124.    Upon information and belief, as a result of the negligence, carelessness and recklessness of agents, officers and/or employees of Syracuse Veterans Affair Medical Center, Kathleen McCall was forced to quit her job in order to care for her brother.

125.    Upon information and belief, as a result of the negligence, carelessness and recklessness of agents, officers and/or employees of Syracuse Veterans Affair Medical Center, Kathleen McCall was forced to move to New York from her home in Florida to live with and take care of her brother for four and a half (4 ½) months.  During this time, she cooked and cleaned for her brother, helped him with his medication and otherwise assisted him in his recovery.   She also paid for the food, utilities and other bills in order support her brother.   She then took her brother back with her to her home in Florida where she continues to care for him.

**AS AND FOR A FIRST, SEPARATE
AND DISTINCT CAUSE OF ACTION,
AGAINST ALL DEFENDANTS
PLAINTIFFS ALLEGE AS FOLLOWS:**

126.    Plaintiffs hereby repeat and reallege all of the allegations set forth above as if fully set forth herein.

127.    Upon information and belief, the Defendant, by and through its agents, officers and/or employees, including Dr. Mary Dirubbo; Dr. Matthew Garman; Dr. Hernan Rincon-Choles; Dr. Colin Hardin; Dr. Nishunt Sethi; Dr. Hani Kozman; Dr. Girish Trikha; Dr. Pankaj Bharati; Dr. Bharta; James V. Grace, RN, Vicky Manning, RN, Heather Daniels, RN, Gerylann Lococo, RN;

and Veronica Benz, RN, negligently, carelessly and recklessly provided care and treatment to the

Plaintiff, Donald McCall, from July 13, 2013 through July 14, 2013.

128.    Upon information and belief, the severe and permanent injuries suffered by Donald

McCall were the direct and proximate result of the carelessness, recklessness, negligence and

improper care and treatment provided by the Defendant through its agents, officers and/or

employees, including Dr. Mary Dirubbo; Dr. Matthew Garman; Dr. Hernan Rincon-Choles; Dr.

Colin Hardin; Dr. Nishunt Sethi; Dr. Hani Kozman; Dr. Girish Trikha; Dr. Pankaj Bharati; Dr.

Bharta; James V. Grace, RN, Vicky Manning, RN, Heather Daniels, RN, Gerylann Lococo, RN;

and Veronica Benz, RN, in that said Defendant held itself out to be skilled and knowledgeable in

the care and treatment of Donald McCall; in that said Defendant held itself out to be skilled and

knowledgeable in the care and treatment of Donald McCall's medical condition; in that said

Defendant accepted and admitted Donald McCall despite not having trained and/or educated

agents, officers and/or employees to properly treat Donald McCall's medical condition; in that

said Defendant failed to train its agents, officers and/or employees on how to properly treat Donald

McCall's medical condition; in that said Defendant accepted and admitted Donald McCall despite

not having proper medical supplies and/or a proper facility to properly treat Donald McCall's

medical condition; in that Defendant failed to properly treat Donald McCall's medical condition;

in that Defendant failed to develop a proper and/or adequate plan of treatment for Donald McCall's

medical condition; in that Defendant failed to follow the plan of treatment developed to provide

proper care for Donald McCall; in that Defendant failed to order proper and appropriate diagnostic

testing for Donald McCall; in that Defendant failed to conduct proper and appropriate diagnostic

testing on Donald McCall; in that Defendant failed to administer proper and appropriate

medications to Donald McCall; in that Defendant failed to administer medications in the proper

and appropriate dosages to Donald McCall; in that Defendant failed to follow doctor's orders regarding the administration of medication to Donald McCall; in that Defendant failed to have proper and appropriate fall protection policies and procedures for patients such as Donald McCall; in that Defendant failed to implement proper and appropriate fall protection for Donald McCall; in that Defendant failed to follow proper and appropriate methods to resuscitate Donald McCall; in that Defendant failed to follow proper and appropriate procedures when the Code Blue was called for Donald McCall; in that Defendant failed to timely and appropriately defibrillate Donald M. McCall; in that Defendant failed to institute and implement proper and appropriate record keeping policies and procedures for patients such as Donald McCall; in that Defendant failed to maintain and preserve its records regarding Donald McCall, including telemetry strips generated before, during and after Donald McCall's Code Blue; in that Defendant failed to transfer Donald McCall to another facility that could better handle his care and treatment and/or could provide a higher level of care; in that Defendant failed to keep abreast of the medical literature concerning treatment of atrial fibrillation, hypertension, hypotension, tachycardia, bradycardia, reduced ventricular ejection fractions, fall protection and resuscitation of patients; and in that Defendant, by and through its agents, officers and/or employees, was otherwise medically negligent, reckless and careless in the care and treatment of Donald McCall's medical condition.

129.   As a direct and proximate result of the negligence, carelessness, and recklessness of the Defendant, by and through its agents, officers and/or employees, including Dr. Mary Dirubbo; Dr. Matthew Garman; Dr. Hernan Rincon-Choles; Dr. Colin Hardin; Dr. Nishunt Sethi; Dr. Hani Kozman; Dr. Girish Trikha; Dr. Pankaj Bharati; Dr. Bharta; James V. Grace, RN, Vicky Manning, RN, Heather Daniels, RN, Gerylann Lococo, RN; and Veronica Benz, RN, Plaintiff Donald McCall's medical condition was not appropriately treated, causing him to suffer

hypotension, bradycardia, loss of consciousness, cardiac arrest, anoxic brain injury, physical injuries from falling, acute renal failure, acute metabolic acidosis and hyperkalemia.

130.   As a direct and proximate result of the negligence, carelessness, and recklessness of the Defendant, by and through its agents, officers and/or employees, including Dr. Mary Dirubbo; Dr. Matthew Garman; Dr. Hernan Rincon-Choles; Dr. Colin Hardin; Dr. Nishunt Sethi; Dr. Hani Kozman; Dr. Girish Trikha; Dr. Pankaj Bharati; Dr. Bharta; James V. Grace, RN, Vicky Manning, RN, Heather Daniels, RN, Gerylann Lococo, RN; and Veronica Benz, RN, the Plaintiff, Donald McCall, has sustained and will continue to sustain severe, permanent and ongoing physical injuries, conscious and significant pain and severe suffering, severe mental anguish and distress, significant cognitive damages, depression, psychological injuries, permanent and lasting disabilities, ongoing lack of enjoyment of life, has been required to undergo extensive medical care and treatment and will likely be required to continue to do so, has been required to take significant amounts of pain and other medications and will likely be required to continue to do so; has been required to undergo extensive physical, occupational and speech rehabilitation and will likely be required to continue to do so, has suffered economic losses and other damages, has expended money and will continue to expend money for medical bills and other expenses, has suffered and will continue to suffer a loss of income, will forever be unable and/or limited in his ability to participate in activities of daily life and the labor force; and otherwise has sustained significant and permanent damages.

**WHEREFORE,** Plaintiffs hereby demand judgment as against the Defendant, through its agents, officers and/or employees named in this action, and each of them jointly, severally and individually, in such fair and reasonable amount as may be awarded by the Court for the negligence, carelessness, recklessness of the Defendant, through its agents, officers and/or

employees, and the physical and mental injuries, pain and suffering, emotional distress,

economic loss, and all other injuries and losses as set forth above, together with other such

further relief as the Court may seem just and proper, together with interest from the date of

events alleged herein, attorney's fees, and costs and disbursements incurred in the prosecution of

this action.

**AS AND FOR A SECOND, SEPARATE**
**AND DISTINCT CAUSE OF ACTION,**
**AGAINST ALL DEFENDANTS**
**PLAINTIFFS ALLEGE AS FOLLOWS:**

132.    Plaintiffs hereby repeat and reallege all of the allegations set forth above as if fully

set forth herein.

133.    Upon information and belief, the Defendant, by and through its agents, officers

and/or employees, including Dr. Mary Dirubbo; Dr. Matthew Garman; Dr. Hernan Rincon-Choles;

Dr. Colin Hardin; Dr. Nishunt Sethi; Dr. Hani Kozman; Dr. Girish Trikha; Dr. Pankaj Bharati; Dr.

Bharta; James V. Grace, RN, Vicky Manning, RN, Heather Daniels, RN, Gerylann Lococo, RN;

and/or Veronica Benz, RN, failed to obtain the full, fair and complete informed consent of Plaintiff,

Donald McCall.

134.    A reasonably prudent person in Mr. McCall's position would not have undergone

the treatment or diagnosis provided by the Defendant, through its officers, agents and/or

employees, if he or she had been fully informed.

135.    As a direct and proximate result of the failure of Defendant, by and through its

agents, officers and/or employees, to obtain the informed consent of Mr. McCall, and without any

negligence or comparative fault on behalf of Mr. McCall, Mr. McCall has sustained and will

continue to sustain severe, permanent and ongoing physical injuries, conscious and significant pain

and severe suffering, severe mental anguish and distress, significant cognitive damages, depression, psychological injuries, permanent and lasting disabilities, ongoing lack of enjoyment of life, has been required to undergo extensive medical care and treatment and will likely be required to continue to do so, has been required to take significant amounts of pain and other medications and will likely be required to continue to do so; has been required to undergo extensive physical, occupational and speech rehabilitation and will likely be required to continue to do so, has suffered economic losses and other damages, has expended money and will continue to expend money for medical bills and other expenses, has suffered and will continue to suffer a loss of income, will forever be unable and/or limited in his ability to participate in activities of daily life and the labor force; and otherwise has sustained significant and permanent damages.

WHEREFORE, Plaintiffs hereby demand judgment as against the Defendant, through its agents, officers and/or employees named in this action, and each of them jointly, severally and individually, in such fair and reasonable amount as may be awarded by the Court for the negligence, carelessness, recklessness of the Defendant, through its agents, officers and/or employees, and the physical and mental injuries, pain and suffering, emotional distress, economic loss, and all other injuries and losses as set forth above, together with other such further relief as the Court may seem just and proper, together with interest from the date of events alleged herein, attorney's fees, and costs and disbursements incurred in the prosecution of this action.

### AS AND FOR A THIRD, SEPARATE, AND DISTINCT CAUSE OF ACTION, AGAINST ALL DEFENDANTS PLAINTIFFS ALLEGE AS FOLLOWS:

136.    Plaintiffs hereby repeat and reallege all of the allegations set forth above as if fully set forth herein.

137.     At all times relevant hereto, the Plaintiff, Kathleen McCall, was and is the sister of Plaintiff, Donald McCall and as such, was and is an immediate family member of Donald McCall.

138.     As a direct and proximate result of the negligence, carelessness and recklessness of the Defendant through its agents, officers and/or employees, including Dr. Mary Dirubbo; Dr. Matthew Garman; Dr. Hernan Rincon-Choles; Dr. Colin Hardin; Dr. Nishunt Sethi; Dr. Hani Kozman; Dr. Girish Trikha; Dr. Pankaj Bharati; Dr. Bharta; James V. Grace, RN, Vicky Manning, RN, Heather Daniels, RN, Gerylann Lococo, RN; and Veronica Benz, RN, Plaintiff Kathleen McCall, was required  to (a) quit her job in order to care for her brother, (b) move to New York from her home in Florida to live with and take care of her brother for four and a half (4 ½) months, (c) cook and clean for her brother, (d) help her brother with his medications, (e) pay for food, utilities and other bills in order support her brother (f) take her brother back with her to her home in Florida where she continues to care for him, and (g) otherwise assisted him in his recovery.

139.     As a direct and proximate result of the negligence, carelessness and recklessness of the Defendant through its agents, officers and/or employees, Kathleen McCall has been required to provide certain care and treatment to Plaintiff Donald McCall which has directly impacted her own life, and as a result caused her to lose her enjoyment of life, and otherwise caused her to incur substantial bills for the cost of his care all to her detriment.

**WHEREFORE,** Plaintiffs hereby demand judgment as against the Defendant, through its agents, officers and/or employees named in this action, and each of them jointly, severally and individually, in such fair and reasonable amount as may be awarded by the Court for the negligence, carelessness, recklessness of the Defendant, through its agents, officers and/or employees, and the physical and mental injuries, pain and suffering, emotional distress,

economic loss, and all other injuries and losses as set forth above, together with other such further relief as the Court may seem just and proper, together with interest from the date of events alleged herein, attorney's fees, and costs and disbursements incurred in the prosecution of this action.

**AS AND FOR A FOURTH SEPARATE,**
**AND DISTINCT CAUSE OF ACTION,**
**AGAINST ALL DEFENDANTS**
**PLAINTIFFS ALLEGE AS FOLLOWS:**

140.    Plaintiffs hereby repeat and reallege all of the allegations set forth above as if fully set forth herein.

141.    At all times relevant hereto, Kathleen McCall was directly involved in the care and treatment of Donald McCall's injuries, from June 15, 2013 to the present, including staying with him overnight in the hospital, moving to New York to take care of him, moving him back to Florida to live with her because he can no longer live by himself, calling for an ambulance for him on multiple occasions for emergency trips to the hospital, taking him to doctor's and rehabilitation appointments, lifting his wheelchair in and out of the car, helping and/or lifting Donald McCall in and out of the car, walking with him to ensure he does not fall, coordinating his care and otherwise physically taking care of him.

142.    At all times relevant hereto, Kathleen McCall witnessed her brother in excruciating pain, emotional suffering, depression and fear.

143.    At all relevant times hereto, Kathleen McCall was within the "zone of danger" when she provided care and treatment to her brother from June 15, 2013 to the present.

144.    As a result of the foregoing, Kathleen McCall was caused to suffer injuries, including, but not limited to severe shock, severe mental anguish and trauma, and physical manifestation of such severe shock and mental anguish, fright, nervousness, anxiety, discomfort, psychological injuries and apprehension.

145.    As a result of the aforesaid experiences, Kathleen McCall has been and continues to be deprived of the ordinary and usual enjoyments of life, health, family and recreation, and all of the same likely will continue in the future.

**WHEREFORE,** Plaintiffs hereby demand judgment as against the Defendant, through its agents, officers and/or employees named in this action, and each of them jointly, severally and individually, in such fair and reasonable amount as may be awarded by the Court for the negligence, carelessness, recklessness of the Defendant, through its agents, officers and/or employees, and the physical and mental injuries, pain and suffering, emotional distress, economic loss, and all other injuries and losses as set forth above, together with other such further relief as the Court may seem just and proper, together with interest from the date of events alleged herein, attorney's fees, and costs and disbursements incurred in the prosecution of this action.

**DATED:**        June 13, 2018

                              **CHERUNDOLO LAW FIRM, PLLC**

                              By:    /s/ Robin Zimpel-Fontaine
                                     Robin Zimpel-Fontaine, Esq.
                                     Bar Roll No.: 4201935
                                     Office and Post Office Address
                                     AXA Tower I, 17th Floor
                                     100 Madison Street
                                     Syracuse, New York 13202
                                     Telephone (315) 449-9500

**COZEN AND O'CONNOR**

By:    <u>/s/ Martin P. Duffey</u>
       Martin P. Duffey, Esq.
       Bar Roll No.: 4571717
       16th Floor - 45 Broadway Atrium
       New York, New York 10006
       Telephone (800)523-2900 (x2780)
       *Attorneys for Plaintiffs, Donald M. McCall*
       *and Kathleen McCall*

**FAX SERVICE NOT ACCEPTED**